hmg.6.28.24



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Bijon A. Mostoufi*<br>*Assistant United States Attorney*<br>*Bijon.Mostoufi@usdoj.gov* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-8135*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

July 1, 2024

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

Rammy G. Barbari, Esq.
Price Benowitz, LLP
409 7th Street, NW, Suite 200
Washington, D.C. 20004

6:03 pm, Aug 28 2024
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____JK_____ Deputy

Re:  United States v. Modupe Aderinokun, a/k/a Modupe Ogunbayo
     Criminal No. JRR-24-229

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Modupe Aderinokun (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **5 p.m. on July 5, 2024**, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offense(s) of Conviction

1.   The Defendant agrees to plead guilty to Count One of the Information, which charges the Defendant with, in Count One, Wire Fraud, in violation of 18 U.S.C. § 1343. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense(s)

2.   The elements of the offense(s) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Information, in the District of Maryland—

> Count One (Wire Fraud): (1) there was a scheme or artifice to defraud or obtain money by means of materially false and fraudulent pretenses, representations, and promises; (2) the Defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud; and (3) in execution of that scheme, the Defendant used or caused the use of interstate wires, as specified in Count One of the Information.

Rev. August 2018

Penalties

3. The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1343 | N/A | 20 years | 3 years | $250,000 or twice the gain or loss | $100 |

   a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

   b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

   c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

   d. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

   e. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

   f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Waiver of Rights

4.  The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

    a.  If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further

trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further stipulate and agree as follows:

Count One (Wire Fraud):

      a.      The applicable base offense level is **7**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §2B1.1(a).

      b.      A **8**-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(1)(E), because the loss was more than $95,000, but not more than $150,000.

      c.      A **2**-level increase applies, pursuant to U.S.S.G. § 2B1.1(b)(12), because the offense involved conduct described in 18 U.S.C. § 1040.

      d.      The adjusted offense level for Count One is **17**.

      e.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt

recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

       f.    A two-level downward adjustment will apply, pursuant to U.S.S.G. § 4C1.1, if the Court determines that the Defendant meets the criteria listed in U.S.S.G. § 4C1.1.

       7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

       8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

       9.    At the time of sentencing, this Office and the Defendant will **jointly recommend a sentence of 16 months' home confinement and a 3-year term of supervised release.** This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Information. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

      10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

       a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground

that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

    b.  The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

    c.  The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Forfeiture

  11.  The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

  12.  Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, namely a forfeiture money judgment in the amount of at least $149,900 in U.S. Currency equal to the proceeds obtained by the Defendant as a result of the scheme to defraud.

  13.  The Defendant agrees that due to her acts or omissions, the full amount of the proceeds she obtained as a result of her offenses are not currently available to the Government for forfeiture, and therefore, one or more of the conditions of 21 U.S.C. § 853(p) have been met, and the Government is entitled to the forfeiture of substitute assets.

  14.  The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

  15.  The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of

Rev. August 2018

the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Abandonment

17. The Defendant knowingly and voluntarily waive any right, title, and interest in the following property recovered during execution of a search warrant at the Defendant's residence in Sykesville, Maryland, on or about February 16, 2023:

  i. a Samsung phone model: SM-5367VL (IMEI: 3520691D2873097)

  ii. a white spiral notebook containing passwords and phone numbers; and

  iii. a yellow striped spiral notebook containing passwords, calculations, and a ledger.

The Defendant consents to the federal administrative disposition, official use, and/or destruction of the above-listed items.

18. The Defendant understands that she would have a right to file a claim to the Abandoned Property and waives her right to claim the Abandoned Property. The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property. The Defendant agrees to execute any documents as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

## Restitution

19. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties stipulate is at least $149,900 in U.S. Currency. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless

of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

20. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

22. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding

prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Bijon A. Mostoufi
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/7/2024
Date

_____
Modupe Aderinokun

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

07/08/2024
Date

_____
Rammy G. Barbari, Esq.

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

### Overview of the Defendant's Criminal Offenses

Between August 2020 and January 2021, the defendant, Modupe Mobolanle Aderinokun ("Aderinokun"), a/k/a "Modupe Ogunbayo," was an employee of the Internal Revenue Service ("IRS"), and a resident of Sykesville, Maryland.

During this relevant period, Aderinokun knowingly and willfully devised and intended to devise a scheme and artifice to defraud the Small Business Administration ("SBA"), of approximately $149,900 by means of materially false and fraudulent pretenses, representations, and promises. For the purposes of executing and attempting to execute the scheme to defraud, Aderinokun admits that she did knowingly and willfully transmit and cause to be transmitted by means of wire comminutions, in interstate commerce, from Maryland to a place outside Maryland, certain writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343. As a result of her scheme to defraud, Aderinokun obtained approximately $149,900.

### The COVID-19 Economic Injury Disaster Loan Program

During the COVID-19 pandemic, American small businesses suffering the effects caused by COVID-19 could seek emergency financial assistance through an SBA program referred to as the Economic Injury Disaster Loan ("EIDL") program. The COVID-19 EIDL benefits were authorized in connection with a Robert T. Stafford Disaster Relief and Emergency Assistance Act declaration.

EIDL loans were administered by the SBA in response to the COVID-19 pandemic as a way for small businesses to pay expenses and bills that could have been paid had the pandemic not occurred. EIDL loan proceeds were not intended to replace lost sale or profits, or for the expansion of a business. EIDL loans were issued directly from the United States Treasury, but applicants applied for an EIDL loan through the SBA via an online portal and application. The application gathered information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster (January 31 2020), the cost of goods sold, and information as to any criminal history of the business owner. Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or misrepresentation to the SBA, or any misapplication of the loan proceeds may result in sanctions, including criminal penalties.

EIDL applications were received in and processed using computer servers located outside Maryland. EIDL disbursement payments were initiated by the SBA using computer servers located

in the state of Colorado, which transmitted the payment information to the Treasury using computer servers located in the state of Virginia.

## Aderinokun's Submission of a Fraudulent EIDL

On or around August 6, 2020, Aderinokun applied for an EIDL loan for Arbitrage Partners ("AP") from her residence in Sykesville, Maryland (the "Sykesville Residence"). AP was an active business with its most recent filing with the State of Maryland being on or about September 9, 2020. AP was established on or about January 14, 2015, as a general merchandise business that reported income and expenses on a Tax Form 1040 Schedule C as a sole proprietorship. Aderinokun has been the sole owner of AP for its entire existence.

Aderinokun submitted the EIDL loan application to the SBA with false and fraudulent information. Aderinokun reported that AP's gross revenues for the twelve months prior to the disaster were $315,500. This information dramatically differed from the gross receipts listed on her 2019 Form 1040, which was $8,555. On the EIDL loan application, Aderinokun listed that AP's cost of goods sold were $0 which differed from the cost of goods sold listed on her 2019 Form 1040 which was $5,985. The inflated gross receipts and elimination of cost of goods sold enabled Aderinokun to receive the maximum loan at the time which was $150,000.

On or about August 31, 2020, the SBA, relying upon Aderinokun's false and fraudulent representations and promises, electronically disbursed $149,900 (the EIDL proceeds minus a $100 fee) to AP's Wells Fargo bank account ending in 1565.

On or about February 16, 2023, federal agents executed a search warrant at the Sykesville residence, during which Aderinokun was interviewed by federal agents. Aderinokun was shown her 2019 and 2020 Tax Forms 1040 where she acknowledged her personally identifiable information, wages from her employment at the IRS, and the Schedule C gross receipts for AP. After being asked which gross receipts were correct, the ones listed on her 2019 Form 1040 or the EIDL loan application, Aderinokun admitted that the figures she represented in EIDL loan application were intentionally inflated and not accurate.

After the scheme to defraud was completed, Aderinokun laundered approximately $101,500 of the monies derived from the scheme. Aderinokun engaged in at least three monetary transactions that each involved more than $10,000 in proceeds of the scheme to defraud. For instance, on or about September 10, 2020, Aderinokun executed check #1516 for $20,000, which was made payable to A.A. Aderinokun admitted that the $20,000 was used to purchase shoes and watches. On or about October 5, 2020, Aderinokun executed a $43,500 interstate wire transfer to Company #1. And, on or about October 6, 2020, Aderinokun executed a $36,000 interstate wire transfer to N.N., which was used to purchase cars that Aderinokun subsequently shipped to Nigeria for profit.

Aderinokun knowingly received an EIDL loan that was significantly greater than what she would have received if she had utilized the gross receipts and cost of goods sold figures on her Forms 1040. She did not use the EIDL funds for the intended purpose.

Aderinokun subsequently paid back all of the money in amounts increasing after becoming aware of the investigation.

SO STIPULATED:

_____
Bijon A. Mostoufi
Assistant United States Attorney

_____
Modupe Aderinokun
Defendant

_____
Rammy G. Barbari, Esq.
Counsel for Defendant